O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASHARA HAWKINS, Guardian Ad Litem of J.D.H., a minor,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | ) NO. CV 13-01853-MAN<br>)<br>) MEMORANDUM OPINION<br>) AND ORDER<br>)<br>)<br>)<br>)<br>)<br>) |

　　　　Lashara Hawkins ("plaintiff"), the mother of J.D.H., a minor ("claimant"), filed a Complaint on March 18, 2013, seeking review of the denial of claimant's application for Supplemental Security Income Disability benefits. ("SSI"). (ECF No. 6.) On May 2, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 12.) The parties filed a Joint Stipulation ("Joint Stip.") on December 12, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits, or alternatively remanding the matter to the Commissioner for further proceedings; and the Commissioner requests that her decision be affirmed. (ECF No. 20.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On May 17, 2010, an application for SSI was filed on behalf of claimant. (Administrative Record ("A.R.") 24.) Plaintiff asserts that claimant, who was born on February 2, 2004 (*id.* 27),[1] has been disabled since May 1, 2010, due to attention deficit hyperactivity disorder ("ADHD") and behavioral problems (*id.* 24, 132).

After the Commissioner denied the claimant's claim initially, plaintiff requested a hearing. (A.R. 24.) On August 25, 2011, plaintiff and claimant appeared and testified at a hearing before Administrative Law Judge Robert A. Evans (the "ALJ"). (*Id.* 24, 38.) On September 9, 2011, the ALJ denied the claim (*id.* 24-34), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (*id.* 1-5). That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

In his September 9, 2011, decision, the ALJ found that claimant has not engaged in substantial gainful activity since May 17, 2010, the alleged onset date of his disability. (A.R. 27.)

An individual under age 18 will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . ." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations prescribe a three-step sequential evaluation process to determine whether a child's impairment(s) result in marked and severe functional limitations. (A.R. 24-26.) The impairment(s) functionally equal the listings, and the child will be found disabled, if a child's impairments result in: "marked" limitations, *i.e.*, limitations that seriously interfere with the child's ability to perform activities, in two domains; or an

---

[1] On May 17, 2010, the date the application was filed, claimant was, as he is now, a school-age child. (A.R. 27 (citing 20 C.F.R. § 416.926a(g)(2)).)

"extreme" limitation, *i.e.*, a limitation that very seriously interferes with the child's ability to perform activities, in one domain,. 20 C.F.R. § 416.92a(d).

The ALJ determined that claimant has the severe impairment of ADHD. (A.R. 27.) The ALJ reviewed: the record, including objective medical evidence, and other relevant evidence from medical sources; information from other sources, such as teachers, family, or friends; claimant's statements (including statements from claimant's parents or other caregivers); and any other relevant evidence in the case record, including how claimant has functioned over time and in all settings, including home, school, and community. (*Id.*) The ALJ specifically found that claimant had the following functional limitations: less than marked limitation in acquiring and using information; marked limitation in attending and completing tasks; no limitation in interacting and relating to others; no limitation in moving about and manipulating objects; no limitation in the ability to care for himself; and no limitation in health and physical well being. (*Id.* 27, 30-34.)

The ALJ determined that claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. part 404, subpart p, appendix 1 (20 C.F.R. §§ 416.924, 416.925, 416.926) (*id.* 27), and, therefore, is not disabled (*id.* 34).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will

suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630 (citing Connett, 340 F.3d at 874). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination . . . .'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges two sources of error. First, she claims that the ALJ failed to properly consider and evaluate the opinion of claimant's treating physician, Dr. Michelle Pietryga. (Joint Stip at 3.) Second, plaintiff claims the ALJ failed to consider the opinion of a lay witness,

claimant's teacher at or about the time of the hearing, Mrs. Brustuen.[2]  (*Id.* at 3, 15.)

### I.     The ALJ Erred By Failing To Properly Consider The Opinions Of Dr. Pietryga.

#### A.     Legal Standard

An ALJ is obligated to take into account all medical opinions of record.  20 C.F.R. § 416.927(b).  It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant.  Magallanes, 881 F.2d at 751.  When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When, as here, it is contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  *Id.*; *see also* Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

---

[2]  This appears to be the correct spelling of the teacher's last name.  (*See, e.g.*, A.R. 206 (confirmed on the Cottonwood Elementary School website).)

B.  Analysis.

Plaintiff claims the ALJ improperly dismissed the opinion of claimant's treating physician, Dr. Michelle Pietryga, because he failed to provide specific and legitimate reasons, based on substantial evidence of record, for rejecting that opinion. (Joint Stip. at 3-8.)

On July 23, 2011, Dr. Pietryga completed a "Childhood Disability Assessment Form." (A.R. 263-65.) In that form, she opined that claimant had: marked limitations in acquiring and using information, attending and completing tasks, interacting with others, and moving about and manipulating objects; less than marked limitations in caring for himself; and no limitations in health and physical well being. (*Id.*)

With regard to Dr. Pietryga's assessment, the ALJ stated the following:

> The undersigned gives this opinion little weight because it is based upon subjective complaints only and Dr. Pietryga appears to be overly sympathetic to the claimant. For example, Dr. Pietryga reported marked limitations regarding the domain involving manipulations. The undersigned notes that the claimant "can't keep hands to self" is hardly an element to manipulation requirements. Moreover, the undersigned cannot fully credit the [medical record from Dr. Pietryga] as it clearly shows it merely reflects the claimant's mother's subjective complaints. Additionally, the claimant has not begun medication despite recommendation by Dr. Beidleman.

(A.R. 29-30.)

As to plaintiff's credibility, the ALJ noted that plaintiff reported that: claimant had problems with sitting down, reading, and writing; could not finish tasks; but did take medication. (A.R. 28.) The ALJ then stated:

> In prehearing reports, Ms Hawkins reported that she is unsure whether the claimant's ability to communicate is limited, whether the claimant's ability to progress in learning is limited, whether the claimant's impairment affects the claimant's behavior, whether the claimant's impairment affects [his] ability to help [himself] and cooperate with others in taking care of personal needs, and whether the claimant's ability to pay attention and stick with a task is limited. . . . The undersigned notes that the claimant['s] mother appeared sincere, concerned, and reasonably credibl[e]; however, her description, while showing a seven-year-old boy who is ADHD and "fidgety" does not elevate to a true disability.

(*Id.*)

### 1. Subjective Complaints Only

First, the ALJ rejected Dr. Pietryga's opinion as based "upon stated subjective complaints only," including claimant's mother's subjective complaints. (A.R. 29.) The Court does not find this reason to be legitimate.

The record shows that Dr. Pietryga completed her assessment after reviewing claimant's evaluation and treatment history. (A.R. 267.) Claimant first presented to Dr. Pietryga on May 10, 2011. (*Id.* 274.) Based the mental status examination she conducted as well as on the claimant's mother's report, Dr. Pietryga concluded that claimant had: ADHD, combined type; ODD (oppositional defiant disorder); and Learning Disorder, NOS. (*Id.* 274-76.) With regard to the mental status exam, Dr. Pietryga stated claimant was "calm and cooperative, walked around the room, was able to stay seated for a short period of time to color," spoke in a soft voice, had a "somewhat restricted" affect, "linear" thought processes, and had "poor" insight and judgment. (*Id.* 275.) Dr. Pietryga gave plaintiff a "Connor's scale" form for completion by claimant's teacher, and she suggested that claimant start taking Ritalin, noting that although claimant had previously

been prescribed Adderall, plaintiff reported that it caused adverse side effects and had discontinued giving it to claimant as prescribed. (*Id.* 274-76.)

On May 17, 2011, Dr. Pietryga contacted claimant's therapist, Karen Potter, who provided information about his treatment history. (A.R. 273.) On June 7, 2011, claimant had another office visit with Dr. Pietryga. During that visit, Dr. Pietryga reviewed the Connor's scale form received from claimant's teacher at Cottonwood School in Palmdale, California (*id.* 206), and noted that claimant had high scores for "hyperactivity, inattention, failing to finish things, [and] disturbing other children" (*id.* 269). Dr. Pietryga observed plaintiff's report of continued negative feedback from the school regarding claimant's behavior and of claimant's teacher's strong recommendation that he be retained in first grade. (*Id.*) During that visit, Dr. Pietryga also observed that claimant was calm and focused on coloring a picture during the session, had a positive mood, and a full and linear affect. (*Id.*)

On June 10, 2011, Dr. Pietryga completed a Progress Note, which documented her review of claimant's lab results "to assess client's medical status, rule out the medical conditions responsive to physical health care based treatment, and to determine potential risks related to prescribing psychotropic medication." (A.R. 268.) Claimant was cleared to start taking Ritalin. (*Id.* 268.)

On August 24, 2011, Dr. Pietryga again met with claimant and his mother. (A.R. 271-72.) She noted claimant was "active and distracted by different toys in the room," his mood was good, and his affect was full and linear. (*Id.* 271.) His mother reported he had recently been suspended from school for fighting with another boy during recess. (*Id.*) Dr. Pietryga gave plaintiff another Connor's scale form for claimant's teacher to complete. (*Id.*)

The above records demonstrate that, in preparing her assessment, Dr. Pietryga did not "*only*" rely on subjective complaints, including plaintiff's complaints regarding claimant's behavior.

Dr. Pietryga also relied on: her own treatment observations; claimant's previous treatment history; his teacher's Connor's scale assessment; his mother's statements regarding factual incidents reported to her by the schools claimant attended in both Alabama and in Palmdale; and lab test results.

Moreover, to the extent that Dr. Pietryga did rely on plaintiff's subjective statements, the ALJ himself found plaintiff to be "sincere, concerned and reasonably credible." (A.R. 28.) However, the ALJ also noted that, although plaintiff reported general problems related to claimant's ADHD (inability to sit down, inability to finish tasks) and his trouble with reading and writing, plaintiff stated on a child function report form that she was "unsure" as to whether claimant's ADHD affected other areas of his behavior and learning (communication, ability to progress in learning, ability to help himself and cooperate with others in taking care of his personal needs, and whether his ability to pay attention and stick with a task was limited). (*Id.* (citing *id.* 118-27).) Based on the behaviors she noted, the ALJ stated that plaintiff described only a "seven-year-old boy who is ADHD and 'fidgety.'" (*Id.*)

Preliminarily, the ALJ misstates plaintiff's report. Although plaintiff noted in some areas on the form that she was "Not Sure" whether claimant's impairment affected his functional abilities, she also indicated the specific subareas in which she *did* see problems. (A.R. 118-27.) For example, although she stated she was "Not Sure" whether claimant's ability to communicate was limited, she also indicated that claimant had difficulty talking clearly. (*Id.* 120.) She indicated that claimant could only be understood "some of the time" by people who do not know him well and that he could not deliver messages, tell jokes, explain why he did something, or use sentences with "because," "what if," or "should have been." (*Id.* 120-21.) Similarly, although plaintiff reported that she was "Not Sure" if claimant's ability to progress in learning was limited, she indicated that claimant could not spell most 3-4 letter words, understand money, tell time, read simple words, or read and understand simple sentences. (*Id.* 122). Plaintiff also reported that she was "Not Sure" whether claimant's impairment affects his behavior with other people, but she

also indicated that he does not generally get along with her or with other adults. (*Id.* 124.) Plaintiff was similarly "Not Sure" whether claimant's impairment affected his ability to help himself and cooperate with others in taking care of his personal needs, but she further reported that claimant does not button clothes, tie shoelaces, choose clothes, hang up clothes, accept criticism or correction, or do what he is told most of the time. (*Id.* 125.) Finally, plaintiff reported that she was "Not Sure" whether claimant's impairment limited his ability to pay attention and stick with a task, but she indicated that claimant neither finishes things he starts nor completes his homework and that he does not complete chores most of the time. (*Id.* 126.)

Plaintiff's purported "inability" to tell the ALJ whether and to what extent claimant's ADHD impacts his abilities in various functional areas -- that is, to progress in learning, communication, ability to take care of his personal needs, and ability to pay attention and stick with a task -- does not adversely affect plaintiff's credibility. Accordingly, Dr. Pietryga's reliance, in part, on plaintiff's subjective reports concerning claimant it is not a legitimate reason to discount Dr. Pietryga's opinions. Indeed, it appears that, in considering this form, plaintiff recognized that a professional, such as Dr. Pietryga, may be better equipped to determine whether claimant's ADHD and/or ODD caused limitations in these functional areas.

Based on the foregoing, the Court concludes that the ALJ's finding that Dr. Pietryga's opinion relied *only* on subjective complaints, including plaintiff's improperly discounted observations of claimant's behavior,[3] was not a specific and legitimate reason for discounting Dr. Pietryga's opinion.

---

[3] On remand, the ALJ should reassess his conclusions regarding plaintiff's credibility and provide clear and convincing reasons for discounting her credibility, if he again determines that to be warranted.

## 2. Overly Sympathetic

Next, the ALJ rejected Dr. Pietryga's opinion, because it appeared to be "overly sympathetic" to claimant. (A.R. 29 (citing *id.* 265).) He based this reasoning on Dr. Pietryga's assessment of "marked" limitations in the domain of "Moving About and Manipulating Objects," as to which she opined that claimant has "hyperactive & impulsive behavior, i.e., difficulty sitting still, restless, 'on the go', trouble keeping his hands to himself." (*Id.* 265.)

At the hearing, the ALJ commented that he had trouble "grasp[ing] . . . [Dr. Pietryga's] assessment because [Dr. Pietryga] went so far as to find marked limitations on manipulations. . . . So I think that Dr. P. was a little confused when [s]he indicated that's marked, just because he can't keep his hands to himself. That's really not what is meant by manipulative limitations. . . . And that kind of discolors the assessment a little bit . . . ." (A.R. 41-42.) In discounting Dr. Pietryga's assessment, the ALJ further stated that claimant's inability to "'keep hands to self,' is hardly an element to manipulation requirements." (*Id.* 29.) However, as noted elsewhere in the ALJ's decision, "[t]his domain considers how well a child is able *to move his body from one place to another and* how a child moves and manipulates objects." (*Id.* 32 (emphasis added)). Thus, this domain actually has two "prongs": how the child moves his body (gross motor skills); and how the child moves and manipulates objects (fine motor skills). (*Id.*) "Limitations in this domain can be associated with musculoskeletal and neurological impairments, other physical impairments, medications or treatments, or mental impairments." (*Id.* (citing 20 C.F.R. § 416.926a(j)(2)(iv), Soc. Sec. Ruling 09-6p).) Considering this description and Dr. Pietryga's comments regarding claimant's restlessness, inability to sit still, difficulty keeping his hands to himself, and "hyperactive and impulsive behavior," it appears that Dr. Pietryga attempted to *appropriately* respond with respect to the "Moving About" prong of this domain, which was not defined on the form she completed. In any event, Dr. Pietryga's comments in this domain were consistent with her other opinions regarding claimant's functional limitations, and there was nothing in her comments that warranted the ALJ's discrediting of her entire opinion on this basis. Thus, the Court finds that this

was not a specific and legitimate reason for discounting Dr. Pietryga's opinion.

### 3. Medication

Finally, the ALJ rejected Dr. Pietryga's opinion, because claimant "has not begun [taking] medication despite recommendation by Dr. Beidleman." (A.R. 29.) Again, the ALJ misstates the record.

On August 11, 2010, Dr. Beidleman, a consultative psychologist in Alabama, prepared a psychological evaluation that confirmed claimant's ADHD. (A.R. 243-45.) Plaintiff informed Dr. Beidleman that claimant had been prescribed Adderall by the Chilton Mental Health Center in Alabama.[4] (*Id.* 243.) However, she had not been giving him that medication, because when she gave it to him, he did not eat or sleep. (*Id.*) Dr. Beidleman noted that the Chilton Mental Health Center had reported that claimant had "difficulties in conduct including being oppositional, defiant, and fighting with peers," and his teachers had noted that he was "overactive." (*Id.*) He concluded that claimant "likely . . . has difficulty functioning adaptively and socially in his current educational environment. It is likely that he will continue to have difficulty maintaining attention and controlling his level of activity. Prognosis for favorable response to treatment is guarded if he is not compliant with his medications and not in active mental health treatment." (*Id.* 244.)

At the August 25, 2011 hearing, plaintiff testified that claimant was taking Ritalin. (A.R. 47-49.) She stated that the medication seems to help a "little bit sometimes," but that he still doesn't focus for more than a minute. (*Id.* 48.) It appears from Dr. Pietryga's records that claimant started taking the Ritalin sometime after June 10, 2011 (*id.* 268), and there is no indication that plaintiff was not giving him this medication. In fact, plaintiff testified at the hearing

---

[4] On May 10, 2011, plaintiff told Dr. Pietryga that claimant had been taking Adderall, but she had discontinued it two months before because he experienced side effects of decreased appetite and irritable moods. (A.R. 274.)

12

that claimant was taking Ritalin twice a day, and she sometimes mixed it in with "applesauce and things like that." (*Id.* 48). Thus, the ALJ's statement that claimant "had not begun medication" is not supported by the evidence, and thus, it does not provide a specific and legitimate reason for discounting Dr. Pietryga's July 23, 2011 opinion.

Based on the foregoing, the Court cannot find that the reasons given by the ALJ for discounting Dr. Pietryga's assessment were specific and legitimate.

## II. Lay Witness Testimony Of Claimant's Teacher, Mrs. Brustuen.

Plaintiff contends the ALJ erred in failing to consider the opinion of Dr. Brustuen, claimant's teacher at Cottonwood Elementary School. (Joint Stip. at 15-16.) Specifically, on June 1, 2011, Mrs. Brustuen completed an Abbreviated Teacher Questionnaire ("Connor's Scale") for Dr. Pietryga of the Valley Child Guidance Clinic. (A.R. 206; *see also id.* 265.) In that questionnaire, Mrs. Brustuen found that claimant fell into the most severe "Degree of Activity" category ("Very much") with respect to the following: (1) restless or overactive; (2) excitable, impulsive; (3) disturbs other children; (4) fails to finish things he starts (short attention span); and (5) inattentive, easily distracted. (*Id.* 206.) She placed him into the "Pretty much" category for constantly fidgeting. (*Id.*) This is the Connor's Scale assessment relied on by Dr. Pietryga in completing her assessment. (*Id.* 269.)

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout, 454 F.3d at 1053) (internal quotation marks omitted). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. § 404.1513(d) ("[W]e may also use evidence from other sources to show the severity of your impairment(s). . . . Other sources include, but are not limited to . . . spouses, parents and other

13

caregivers, siblings, other relatives, friends, neighbors, and clergy."). Such testimony is competent evidence and "cannot be disregarded without comment." Bruce, 557 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks omitted)). When rejecting the testimony of a lay witness, an ALJ must give specific reasons that are germane to that witness. *Id.*

Where, as here, an ALJ fails to discuss competent lay witness testimony favorable to the claimant, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different determination." Stout, 454 F.3d at 1056. However, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)).

The Commissioner contends that the ALJ did not need to consider this evidence, because the ALJ implicitly considered it -- and rejected it -- when he rejected Dr. Pietryga's opinion. (Joint Stip. at 17.) The Commissioner also argues that to the extent the ALJ rejected a similar, albeit "more detailed," questionnaire completed by claimant's kindergarten teacher in Alabama (*see* A.R. 150-57),[5] "he also provided germane reasons for rejecting the form allegedly completed by the first grade teacher, Ms. Brustein [sic]," which included even less information (Joint Stip. at 17-18). The Commissioner also states that there are no records from the school corroborating the information in Mrs. Brustuen's form. (*Id.* 17.)

These arguments are ill-founded. Indeed, there *are* school records corroborating the information. Claimant's February 11, 2011 IEP report prepared by the Antelope Valley School

---

[5] The ALJ rejected this opinion, because the teacher did "not provide a basis for . . . her opinions" and gave "no explanation as to each of her statements nor . . . [provided] any reference to any other documents to support such statements." (A.R. 29.)

14

District specifically states:

> [Claimant's] academic progress was assessed with the Woodcock Johnson III NU Tests of Achievement on 1/27/11. During testing he was cooperative, but appeared fidgety (could not sit still on chair–stood, knees on chair etc).
>
> . . . .
>
> [Claimant's] teacher identifies him as struggling academically with a high level of difficulty focusing and attending. *His attention deficit is greatly lessened on the days that he takes his medication. On days he does not take the Adderall, he is distracted by any noise or interruption around him which means he is not able to attend to task and complete his work.* Interventions in the classroom include placement in an appropriate reading group level during grade level reading exchange, small group support with teacher and 2-3 other students, shorter homework assignments, and after-school tutoring class. . . . [¶] *[Claimant's] inability to focus and attend on days when he does not take his medication results in impulsive behaviors.* [¶] Per results of the ADHDT Rating Scale completed by both parents and teachers, [claimant] demonstrates hyperactivity in both the home and school setting. [Claimant] has been diagnosed with ADHD and . . . exhibits a processing deficit in the area of attention.

(A.R. 173, 174 (emphasis added).)

The ALJ's failure to provide an appropriate reason for rejecting the lay witness statement of Mrs. Brustuen constitutes error. The Court cannot find the ALJ's error in failing to mention Mrs. Brustuen's assessment to be harmless, because it is not clear that proper consideration of her assessment would not materially affect the disability determination in this case. Molina, 674 F.3d

at 1122. On remand the ALJ must provide germane reasons, if they exist, for rejecting Mrs. Brustuen's statements regarding her observations of the nature and extent of claimant's alleged impairments and limitations.

### III. Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. Id. at 1179-81. Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. On remand, the ALJ must correct the above-mentioned deficiencies and errors.

While the Court cannot find the challenged errors in the ALJ's decision to be harmless and cannot accept various *post hoc* rationalizations now proffered to support the ALJ's decision, the Court also cannot conclude, on the record before it, that claimant is entitled to benefits. Significantly, it appears that medication significantly improved claimant's performance and conduct in school (A.R. 174), and there is no medical evidence to support the conclusion that Ritalin and/or another medication could not adequately improved claimant's functioning in school without significant adverse side effects. Thus, it may be that claimant's impairment can be effectively controlled with medication. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."); see also Arellano v. Colvin, No. CV 13-6750 JC, 2014 WL 1092836, at *10 (C.D. Cal. 2014) (noting

that plaintiff had failed to introduce any evidence that his alleged side effects could not be adequately addressed by adjusting the medication ); Epps v. Astrue, No. 09-1380-WQH (WVG), 2010 WL 3632801, at *6 (S.D. Cal. Aug. 13, 2010) (plaintiff was not disabled where, *inter alia*, plaintiff's medication controlled her impairments and her occasional complaints of side effects were addressed by adjustments to her medication regimen).  Accordingly, further development of the record is necessary to properly address whether claimant is entitled to the payment of benefits.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: August 12, 2014

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE